**IN RE the MARRIAGE OF: Douglas J. ONDRASEK, Petitioner-Respondent,†**

v.

**Janet TENNESON, f/k/a Janet Ondrasek, Respondent-Appellant.**

Court of Appeals

*No. 90-0272. Submitted on briefs September 24, 1990.—Decided October 24, 1990.*

(Also reported in 462 N.W.2d 915.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Linda Swagger Maris,* of *Richard J. Podell & Associates, S.C.* of Milwaukee.

On behalf of petitioner-respondent, the cause was submitted on the brief of *Timothy R. Young,* of *Dempsey, Magnusen, Williamson & Lampe* of Oshkosh.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J. Janet Tenneson, f/k/a Janet Ondrasek, appeals from an order dismissing her motion requesting child support. The issue on appeal is whether a divorce stipulation that waives or sets a ceiling on child support and prevents modification of child support offends public policy. Because we hold that an unmodifiable waiver or ceiling is against public policy, we reverse the order and remand for a hearing.

The parties were divorced in November 1983 and entered into a marital settlement agreement. They had two children.[1] The marital settlement agreement was incorporated into the judgment of divorce. The stipula-

---

[1] The parties' oldest child is developmentally disabled and has resided in St. Coletta School in Jefferson, Wisconsin, since 1979. The youngest son is the subject of this child support dispute.

tion established periodic payments from Douglas to Janet according to I.R.C. sec. 71. The payments were to be paid once a month for 121 months. The periodic payments included spousal support, mortgage and contribution for real estate taxes, and child support. The relevant sections of the divorce stipulation state:

8.    PERIODIC PAYMENTS, MORTGAGE, TAXES AND CHILD SUPPORT

A.   PERIODIC PAYMENTS

[Douglas] recognizes that he has a legal obligation of support imposed or incurred because of a marital or family relationship.

. . ..

(If the youngest child) were to reside on a permanent basis with [Douglas] . . . (the periodic payments) shall be reduced for that period by $5000.00 per year.

. . ..

[N]either party shall have the right to have the amount as established herein to be otherwise increased or decreased.[2]

. . ..

B.   CHILD SUPPORT

. . ..

While [Janet] is receiving the periodic payments and/or [Douglas] is paying his one-half (½) of the mortgage payments and real estate taxes on the residence of the parties, there shall be no specifically designated support paid by [Douglas] to [Janet]. However, both parties acknowledge that the Court retains jurisdiction over child support.

---

[2]The events the parties agreed would allow modification of the periodic payments were to include: Janet remarries and one or more children reside with her; Janet's other income exceeds a certain amount; Douglas becomes unable to work and his income falls below a certain amount.

The youngest son changed placement from Douglas's to Janet's residence. Janet filed an order to show cause why Douglas should not be required to pay child support. The trial court held that Janet was estopped from seeking child support payments because she had waived child support as long as she was receiving periodic payments. The trial court found that the stipulation was enforceable and not against public policy.

The construction of a written contract is normally a matter of law for the court. *Levy v. Levy,* 130 Wis. 2d 523, 528, 388 N.W.2d 170, 172 (1986). The appellate court may determine questions of law independently with no deference to the conclusions reached by the trial court. *Id.* at 529, 388 N.W.2d at 172–73.

The stipulation allows for two interpretations. Either Janet is estopped from seeking child support because she completely waived it while she receives periodic payments, or she agreed to a child support "ceiling" of $5,000 annually and waived any opportunity to modify the "ceiling" while she receives periodic payments. The effect of either interpretation is to prevent a hearing on the issue of whether there has been a change in circumstances requiring modification of child support obligations. For reasons stated below, both interpretations violate public policy because under either one the child's best interests are not adequately protected.

Douglas argues that Janet is estopped from requesting child support payments as long as she is receiving periodic payments. To invoke estoppel, a party must show that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from its terms on the grounds that the court could not have

entered the order it did without the parties' agreement. *Rintelman v. Rintelman,* 118 Wis. 2d 587, 596, 348 N.W.2d 498, 503 (1984).

The paramount goal of the child support statute is to promote the best interests of the child, *Kuchenbecker v. Schultz,* 151 Wis. 2d 868, 875, 447 N.W.2d 80, 83 (Ct. App. 1989), and to avoid financial hardship for children of divorced parents. *In re A.S.D.,* 125 Wis. 2d 529, 534, 372 N.W.2d 921, 923 (Ct. App. 1985). Furthermore, because of the public interest in the welfare of children, the child's best interests transcend an agreement or stipulation of the parties. *Koslowsky v. Koslowsky,* 41 Wis. 2d 275, 281, 163 N.W.2d 632, 635 (1969).

The public policy in protecting the best interests of the child is established by the legislature. In overseeing the dissolution of a marriage, the trial court is required to order necessary and reasonable child support. Section 767.25(1), Stats. The trial court retains jurisdiction to modify a divorce judgment providing for child support. Section 767.32(1), Stats. Although the trial court is prohibited from modifying a waiver of spousal maintenance or a final division of property, *id.,* the legislature did not create the same prohibition for child support.[3] Thus, in making child support continually open, the best interests of the child are served because it allows modification for a change in circumstances unforeseen at the time the divorce judgment was entered.

---

[3]Courts do retain jurisdiction for modification of maintenance if maintenance is not completely waived. Section 767.32(1), Stats. Any attempt by the parties to isolate maintenance payments from judicial review is against public policy. *Nichols v. Nichols,* 156 Wis. 2d 503, 508, 457 N.W.2d 492, 494 (Ct. App.), *petition for review granted,* 457 N.W.2d 323 (1990).

In *Kuchenbecker,* the court stated that the paramount goal of sec. 767.25, Stats., would be defeated if the assignment of health care responsibility were not recognized as an aspect of child support and therefore modifiable. *Kuchenbecker,* 151 Wis. 2d at 876, 447 N.W.2d at 83. The court reasoned that health care needs are unpredictable. The child could receive inadequate medical attention if health care responsibilities were not modifiable. *Id.* Likewise, if a waiver or "ceiling" of the entire child support obligation is deemed unmodifiable, the needs of a child could be left unsatisfied to the same extent as the health care needs addressed in *Kuchenbecker.* This is particularly true in the case before us because a waiver of, or ceiling on, the entire child support obligation encompasses more needs than health care.

The Wisconsin Supreme Court has indicated that an agreement with the same effect as the one before us would be unenforceable because of the court's concern for the welfare of the children. *Severson v. Severson,* 71 Wis. 2d 382, 389–90, 238 N.W.2d 116, 121 (1976). The court stated that an agreement to make increased child support payments in exchange for an assurance that the agreement would preclude future judicial modification would not be implemented by the court. *Id.*

Douglas argues that the stipulation, in its entirety, is in the best interests of the child. Even if the stipulation was fair when it was created, making a child support provision unmodifiable does not necessarily make the stipulation fair in the future. Provisions preventing future determination of the best interests of the child may leave the child inadequately protected. Unforeseen

changed circumstances may require support beyond the amount of waived or stipulated child support.

Thus, the statutory goal of providing for the best interest of the child would be defeated if a party is precluded from seeking child support necessary for the best interests of the child. The public policy of protecting children requires that there be an opportunity to determine whether a change in circumstances warrants a modification of child support.

*By the Court.*—Order reversed and cause remanded.